Wherry, J., dissenting: I disagree with the majority to the extent it holds section 1.6664-2(c)(1), Income Tax Regs.,[1] to be a permissible construction of section 6664(a)(1)(A), for many of the reasons Judge Gustafson articulates in his finely crafted dissent. Not only is section 1.6664-2(c)(1), Income Tax Regs., at variance with the statute it purports to interpret; it also renders the totality of the Commissioner’s regulatory scheme, as set forth in section 1.6664-2, Income Tax Regs., contradictory and unreasonable. I would, therefore, hold invalid section 1.6664-2(c)(1), Income Tax Regs., and certain regulatory examples inextricably linked with it.[2] Ignoring these provisions, I find that the remainder of section 1.6664-2, Income Tax Regs., is sufficiently consistent, both with the statute and among its constituent parts, to sustain a section 6663 civil fraud penalty here. I would, however, impose that penalty not on the entire amount by which petitioner overstated his withholding credits, but only on the portion of the overstated withholding credits that he fraudulently claimed and received as a refund. I. Opening the Door to Withholding Credits The majority asserts, without explanation, that “Neither paragraph (1)(B) [of section 6664(a) relating to amounts collected without assessment] nor (2) [of section 6664(a) relating to rebates] applies in this case.” See majority op. p. 503. The majority, thus, accepts respondent’s claim that in each of petitioner’s tax years at issue the amount of a section 6664(a)(2) rebate was, respectively, zero. In failing to subject this claim to scrutiny, the majority has denied itself the opportunity to appreciate the creativity and complexity underlying section 1.6664-2(d), Income Tax Regs. This section of the regulations is not mentioned in either petitioner’s or respondent’s briefs but, nonetheless, constitutes the basis for arriving at respondent’s result under section 1.6664-2(c)(1), Income Tax Regs., which petitioner challenges and respondent defends. Siding with respondent, the majority accurately observes that “the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a).” See majority op. p. 508. I suggest that respondent finds the statutory hook for his regulatory innovation not in section 6664(a)(1)(A), whose plain meaning, as Judge Gustafson points out, could hardly be clearer, but instead in section 6664(a)(1)(B). A. Section 6664(a)(1)(B), Not Section 6664(a)(1)(A), Turns the Key Section 6664(a)(1)(A) replicates the operative language of section 6211(a)(1)(A), the parallel provision in the definition of deficiency (“the amount shown as the tax by the taxpayer on his return”). In contrast, section 6664(a)(1)(B) uses words slightly different from those of its deficiency counterpart, section 6211(a)(1)(B). Whereas section 6664(a)(1)(B) specifies “amounts not so shown previously assessed (or collected without assessment)”, section 6211(a)(1)(B) refers to “amounts previously assessed (or collected without assessment) as a deficiency”. (Emphasis supplied.) When compared with section 6211(a)(1)(B), section 6664(a)(1)(B) contains the additional qualifying phrase “not so shown” before “previously assessed” but omits the qualifying phrase “as a deficiency” after the parenthetical “(or collected without assessment)”. Relying on that omission, the Commissioner has concluded in section 1.6664-2(d), Income Tax Regs., that the additional qualifier “not so shown” in section 6664(a)(1)(B) does not apply to the parenthetical “(or collected without assessment)”. In other words, the Commissioner reads section 6664(a)(1)(B) as referring to two different kinds of amounts: (1) Those not shown on the return that were previously assessed; and (2) those that were collected without assessment. This taxonomy, in turn, allows the Commissioner to define the latter amounts as the amount by which the total of the credits allowable under section 31 (relating to tax withheld on wages) and section 33 (relating to tax withheld at source on nonresident aliens and foreign corporations), estimated tax payments, and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer). [Sec. 1.6664-2(d), Income Tax Regs.] Section 6664(a)(1)(B), and its differences with section 6211(a)(1)(B), creates an opening, through which the Commissioner has dragged withholding credits into the equation for calculating an underpayment.[3] B. Withholding Credit Is Amount Collected Without Assessment Except When I Say It Is Not Unfortunately for the Commissioner, neither the preamble to the proposed or final regulations nor the regulations themselves clarify why including withholding credits in amounts collected without assessment, under section 6664(a)(1)(B), also requires that we reduce amounts shown as tax under section 6664(a)(1)(A) by any overstated withholding credits. Even worse, under the plain meaning of the Commissioner’s own regulations, in a case where there is no deficiency as defined in section 6211(a), a refund of overstated withholding credits would constitute a rebate under section 6664(a)(2). Consequently, the regulations would count this refunded amount twice in calculating an underpayment, once by reducing the amount shown as the tax pursuant to section 1.6664-2(a) and (c)(1), Income Tax Regs., and then again as a rebate pursuant to section 1.6664-2(a) and (e), Income Tax Regs. Respondent tries to disavow this anomalous effect of his own handiwork. Respondent’s posttrial brief and section 1.6664-2(g), Examples (1) and (3), Income Tax Regs., imply that when withholding credits are refunded, they cease to be amounts collected without assessment and this cessation somehow has retroactive effect so that the refund does not constitute a rebate within the meaning of section 6664(a)(2). Reaching this conclusion, however, requires reversing the laws of space and time, the rules of logic and grammar, and the force of our own precedent. Respondent presumably relies on the parenthetical “(provided such excess has not been refunded or allowed as a credit to the taxpayer)” in section 1.6664-2(d), Income Tax Regs., to conclude that when withholding credits are refunded, they no longer constitute amounts collected without assessment. Therefore, according to respondent, the refund cannot be a rebate under section 6664(a)(2). This flies in the face of the obvious implication of the regulatory text itself that until such time as a withholding credit is refunded, it remains an amount collected without assessment. In fact, section 1.6664-2(g), Example (2), Income Tax Regs., suggests as much. It should follow that as long as the tax shown on the return is no less than the tax imposed, so that there is no deficiency under section 6211(a), any refund of the withholding credit could only have been “made on the ground that the tax imposed was less than * * * Amounts not so shown previously assessed (or collected without assessment)”. Sec. 1.6664-2(e), Income Tax Regs. C .In a Galaxy Far, Far Away Respondent appears to construct a multiverse version of reality in which the moment a withholding credit is refunded, it enters a parallel universe, as it were, where the refunded amount was never an amount collected without assessment to begin with. Tax law, alas, must inhabit our universe where the arrow of time can move in only one direction and cause must precede its effect. If a withholding credit is an amount collected without assessment, then it must remain so until it is refunded. And if the refund, when made, is made on the ground that the tax imposed is less than the amount of withholding credits, then that refund must constitute a rebate under section 6664(a)(2). Respondent’s difficulty lies in the fact that the statutory design envisions any amount collected without assessment as potentially affecting the calculation of an underpayment in two ways: (1) Negatively, under section 6664(a)(1)(B); and (2) positively, under section 6664(a)(2).[4] Because respondent has included withholding credits in amounts collected without assessment under section 6664(a)(1)(B), his attempt to deny their existence in computing a rebate under section 6664(a)(2) is logically irreconcilable. Grammar and our own precedent also undermine respondent’s cause. The Commissioner’s own words in the regulations refer to the amount by which withholding credits “and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer).” Sec. 1.6664-2(d), Income Tax Regs, (emphasis supplied). The use of the present perfect tense in the parenthetical dictates that the parenthetical apply at the time that the underpayment is calculated. We have long maintained that for purposes of the civil fraud penalty, the base on which the penalty is imposed be determined as of the time when the return is filed and not any later time such as when the notice of deficiency is issued. See, e.g., Stewart v. Commissioner, 66 T.C. 54 (1976). Underpinning such decisions was the rationale that a taxpayer should not, after fraudulently understating his tax liability, retain the power to avoid the fraud penalty by the simple expedient of later paying the remainder of his correct tax upon discovering his return was under audit. * * * [Id. at 58-59.] It would surely be perverse to allow respondent’s discretion in handling a refund claim to affect the amount of petitioner’s underpayment well after petitioner has filed his return. Clearly, then, so long as a taxpayer has no deficiency under section 6211(a), the plain meaning of the regulations’ language would cause a refund of a withholding credit to be a rebate under section 6664(a)(2).[5] Further, any refund that this taxpayer obtains by overstating withholding credits would also constitute a section 6664(a)(2) rebate since this refund must necessarily have been “made on the ground that the tax imposed was less than” (emphasis supplied) the amounts collected without assessment. Sec. 6664(a). In fact, there could exist no other grounds for making this refund. II. Taking the Blue Pencil to the Commissioner’s Drafting Finally, to the case of Rick D. Feller, where the notices of deficiency evidence the absence of a section 6211(a) deficiency in each of the tax years at issue. For the reasons discussed above, section 1.6664-2(d) and (e), Income Tax Regs., would cause petitioner’s section 6664(a) underpayment to include so much of his overstated withholding credits that he claimed and received as a refund. However, if the challenged regulation, section 1.6664-2(c)(1), Income Tax Regs., is valid, we would consider the overstatement of withholding credits yet again. Specifically, we would adjust the tax shown on the return by subtracting from it the entire amount of the overstated withholding credits.[6] We would then use this adjusted figure, rather than the actual tax shown on the return, to calculate petitioner’s underpayment. The refunded portion of the overstated withholding credits would, thus, be counted one more time.[7] This bizarre result is untenable, and either section 1.6664-2(c)(1), Income Tax Regs., or both section 1.6664-2(c)(1) and (d), Income Tax Regs., must give way.[8] I agree with Judge Gustafson that “section 6664(a)(1)(A) is not ambiguous, and under the Supreme Court’s Chevron analysis, the inquiry stops there.” Gustafson op. p. 541. Moreover, as I have shown, section 1.6664-2(c)(1), Income Tax Regs., as currently written, causes the Commissioner’s regulatory scheme to generate results that are incorrect, illogical and incoherent. I would, therefore, invalidate section 1.6664-2(c)(1), Income Tax Regs.[9] However, I also believe that the omission of the phrase “as a deficiency” in section 6664(a)(1)(B), when compared with section 6211(a), leaves the former sufficiently ambiguous to invite regulatory interpretation. Under “step 2” of a Chevron analysis, I would then consider whether the interpretation that the Commissioner has provided in section 1.6664-2(d), Income Tax Regs., is “based on a permissible construction of the statute.” Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). The Commissioner’s interpretation is by no means “the only one * * * [he] permissibly could have adopted”. Id. n.11. But I can find nothing in the statute that would indicate that Congress would not have sanctioned including withholding credits in amounts previously collected without assessment. See id. at 845. Further, as the majority discusses at length, there is sufficient legislative history to support the proposition that Congress wanted to distinguish an underpayment under section 6664(a) from a deficiency under section 6211(a). I would, therefore, defer to respondent’s interpretation of section 6664(a)(1)(B), which he provides in section 1.6664-2(d), Income Tax Regs. Applying the unambiguous plain language of that regulation section to petitioner’s case and tracing its consequences sequentially through section 1.6664-2(e) and (a), Income Tax Regs., I would find underpayments in the amounts of the overstated withholding credits claimed and received as refunds.[10] I would, therefore, sustain a section 6663 civil fraud penalty not on the entire amount by which petitioner overstated his withholding credits for each tax year at issue but only on such portion of the overstated withholding credits as he had claimed and received as a refund.[11] III. Conclusion I believe that the Commissioner could have drafted an expanded version of the current section 1.6664-2(d), Income Tax Regs., in a manner that delivered results mathematically identical to those that section 1.6664 — 2(c)(1), Income Tax Regs., seeks to attain. He could have done so without the double-counting error that plagues the current set of regulations. Our mandate, however, is to test the validity of the regulations as the Commissioner has drafted them and seeks to apply them, not to improve or improvise upon them in order to achieve a “just” result. I would hold section 1.6664-2(c)(1), Income Tax Regs., to be an impermissible construction of section 6664(a)(1)(A). I respectfully dissent. Halpern and Gustafson, JJ., agree with this dissent. Sec. 1.6664-2(c), Income Tax Regs., was adopted on Jan. 9, 2007, pursuant to T.D. 9309, 2007-1 C.B. 497, which also removed sec. 1.6664r-2T, Temporary Income Tax Regs., 70 Fed. Reg. 10037 (Mar. 2, 2005). The latter, in turn, had replaced the prior final regulation, sec. 1.6664r-2(c), Income Tax Regs., adopted on Dec. 31, 1991, pursuant to T.D. 8381, 1992-1 C.B. 374. The temporary regulation, issued to modify the rules relating to qualified amended returns contained in the prior final regulation, had retained par. (c)(1) of that regulation unchanged. The current version of sec. 1.6664 — 2(c)(1), Income Tax Regs., adopted on Jan. 9, 2007, is identical to the version adopted on Dec. 31, 1991, and in effect during the tax years at issue. Also, “both parties agree that the regulation * * * is applicable to the computation of the underpayments in the instant case.” See majority op. p. 504. See infra note 9. As evidence, consider the preamble to the proposed regulations, which had justified the inclusion of withholding credits in amounts collected without assessment under sec. 6664(a)(1)(B), even though such credits are excluded under sec. 6211(a)(1)(B), by arguing that the amount of an underpayment is reduced by amounts collected without assessment whereas the amount of a deficiency is not. Notice of Proposed Rulemaking, 56 Fed. Reg. 8947 (Mar. 4, 1991). Sec. 6664(a) establishes the following relationship between underpayment and an amount collected without assessment: Underpayment equals the amount of tax imposed minus (the amount shown as the tax by the taxpayer on his return plus all amounts not so shown previously assessed, or collected without assessment, minus the amount of rebates made). Sec. 1.6664-2(a), Income Tax Regs., accurately represents this relationship in the following algebraic expression: Underpayment = W - (X + Y - Z), where W = the amount of income tax imposed; X = the amount shown as the tax by the taxpayer on his return; Y = amounts not so shown previously assessed (or collected without assessment); and Z = the amount of rebates made. Rearranging the terms yields the following equivalent expression: Underpayment = (W + Z) - (X + Y). It is easy to see that an increase of $1 in the amount collected without assessment increases Y and, thereby, reduces underpayment by $1. However, to the extent that this $1 is refunded “on the ground that the tax imposed was less than the excess of'■ * * [(X + Y)] over the rebates previously made”, sec. 6664(a)(2), the resulting increase in Z will increase underpayment by the same amount. A sec. 6211(a) deficiency could arguably cause a rebate under sec. 6664(a)(2) to be smaller by the same amount. To see this, consider a situation where “the amount by which the tax imposed * * * exceeds * * * the amount shown as the tax by the taxpayer upon his return” is $1. This would create a deficiency of $1 under sec. 6211(a). It may be argued that this $1 could not be included in “so much of * * * [a refund] as was made on the ground that the tax imposed was less than the excess of * * * [(X + Y), as defined supra note 4] over the rebates previously made.” Sec. 6664(a). Under this argument, any sec. 6664(a)(2) rebate would be reduced by $1. Even though a sec. 6211(a) deficiency may result in a smaller rebate under sec. 6664(a)(2), the sec. 6664(a) formula for underpayment would automatically pick up the deficiency to leave the amount of underpayment, if any, unchanged. See supra note 4 for the algebraic formula for computing the underpayment. See also infra note 10, discussing the converse case, where the tax shown on the return exceeds the tax imposed, and infra note 11, deriving the numerical results for such a converse case. It is unclear from the regulations whether the challenged adjustment under sec. 1.6664— 2(c)(1), Income Tax Regs., to the amount of tax shown on the return also purports to cover the calculation of a sec. 6664(a)(2) rebate under sec. 1.6664-2(e), Income Tax Regs. Compare sec. 1.6664-2(a)(1)(i), Income Tax Regs. (“The amount shown as the tax by the taxpayer on his return (as defined in paragraph (c) of this section)”), with sec. 1.6664-2(e)(1)(i), Income Tax Regs. (“The amount shown as the tax by the taxpayer on his return” without a cross-reference to “paragraph (c) of this section”). However, the final amount of any sec. 6664(a)(2) rebate calculated under sec. 1.6664-2(e), Income Tax Regs., would remain unchanged, whether or not sec. 1.6664-2(c)(1), Income Tax Regs., applies. Applying sec. 1.6664-2(c)(1), Income Tax Regs., to this calculation would have two equal and opposite effects that would cancel each other out. On the one hand, the amount of tax shown on the return under sec. 1.6664 — 2(e)(l)(i), Income Tax Regs., would be reduced by the amount of the challenged adjustment. On the other hand, however, amounts collected without assessment under sec. 1.6664-2(e)(1)(ii), Income Tax Regs., would be increased by the same amount. See sec. 1.6664r-2(d), Income Tax Regs, (restricting amounts collected without assessment to those that “exceed the tax shown on the return”). Since the calculation of a sec. 6664(a)(2) rebate entails adding the respective amounts under sec. 1.6664-2(e)(1)(i) and (ii), Income Tax Regs., the net effect would be zero. See infra note II showing such double-counting of overstated withholding credits for petitioner’s 1992 tax year. Quite apart from the double-counting of the refunded portion of overstated withholding credits, the challenged adjustment under sec. 1.6664-2(0(1), Income Tax Regs., introduces another inconsistency, and a potentially fatal one, with the remaining provisions of the regulations. Under sec. 1.6664 — 2(d), Income Tax Regs., “amount ‘collected without assessment’ is the amount by which * * * [withholding credits] and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer).” (Emphasis supplied.) Sec. 1.6664-2(0(1), Income Tax Regs., says that the adjustment to the tax shown on the return applies “For purposes of paragraph (a) of this section”. And though the term “amount collected without assessment” is fully defined only in sec. 1.6664 — 2(d), Income Tax Regs., “paragraph (a) of this section” certainly mentions and uses it as an input in the underpayment formula set forth there. A literal reading of this applicability provision would require the challenged adjustment to be made to all the terms that go into the underpayment formula of sec. 1.6664 — 2(a), Income Tax Regs., including amount collected without assessment. As a consequence, depending upon the facts of a particular situation, none, some or all of the benefits that respondent seeks from the challenged adjustment in par. (a) would have to be given up in par. (d). The results could be startling in a case, such as petitioner’s, where respondent has relied on the challenged adjustment to reduce the amount shown as tax to a negative number. Invalidating sec. 1.6664-2(c)(1), Income Tax Regs., would, thus, confer the added benefit of precluding this self-defeating construction and salvaging the remainder of sec. 1.6664-2, Income Tax Regs. By comparison, invalidating sec. 1.6664-2(d), Income Tax Regs., would eviscerate the entire regulatory venture. I do not believe that in the absence of sec. 1.6664-2(d), Income Tax Regs., sec. 1.6664r-2(c)(1), Income Tax Regs., or for that matter, any other provision of sec. 1.6664-2, Income Tax Regs., can stand on its own since, as explained above, sec. 1.6664~2(d), Income Tax Regs., is the provision that enables talcing withholding credits into account in computing an underpayment. I would also invalidate sec. 1.6664-2(g), Examples (1) and (3), Income Tax Regs., holding them to be unreasonable and impermissible constructions of the Commissioner’s own text contained in sec. 1.6664-2(d), Income Tax Regs. Respondent did not determine a sec. 6211(a) deficiency for any of petitioner’s tax years at issue. However, for one or more of these years petitioner had in fact overstated his tax liability, so that the amount shown on the return exceeded the tax imposed. Ceteris paribus, this would cause a sec. 6664(a)(2) rebate to be larger by the amount of the overstatement. However, the sec. 6664(a) underpayment would remain unchanged in the amount of the total refund. See infra note 11, establishing this result for petitioner’s 1992 tax year, where the amount shown as tax did, in fact, exceed the tax imposed. Cf. supra note 5 (discussing the case of a sec. 6211(a) deficiency). This is the exact amount that one obtains as a sec. 6664(a) underpayment by applying the formula set forth in sec. 1.6664-2(a)(2), Income Tax Regs., and discussed supra note 4, without giving effect to the challenged adjustment under sec. 1.6664-2(c)(1), Income Tax Regs. I formally demonstrate this below for petitioner’s 1992 tax year. I then show the impact of the challenged adjustment on petitioner’s 1992 underpayment amount, highlighting the double-counting of the refunded portion of the overstated withholding credits. Finally, I compare petitioner’s 1992 underpayment amount, computed with and without the challenged adjustment, to the underpayment that respondent actually determined. Recall from supra note 4 that the required inputs for the underpayment formula are: W = the amount of income tax imposed; X = the amount shown as the tax by the taxpayer on his return; Y = amounts not so shown previously assessed (or collected without assessment); and Z = the amount of rebates made. For his 1992 tax year petitioner claimed and received a refund of $86,181, $5,328 of which consisted of claimed excess Social Security tax withheld. The record is silent on the legitimacy or otherwise of such claimed withholdings, and respondent has not treated them as overstated withholdings in applying the challenged adjustment under sec. 1.6664 — 2(c)(1), Income Tax Regs. For purposes of this exercise, therefore, I will ignore the claimed excess Social Security withholdings and assume a refund amount of $86,181 less $5,328, or $80,853. Respondent determined petitioner’s 1992 tax liability to be $30,022, whereas petitioner had written a figure of $57,244 on line 53 of his 1992 Form 1040, U.S. Individual Income Tax Return, against the words “This is your total tax”. Petitioner claimed withholdings of $138,097, of which $3,097 were actual and the remaining $135,000 were fictitious. Thus, in the underpayment formula, W is $30,022 and X is $57,244. Also, Y is zero and Z is $108,075. Note that Y consists of amounts actually collected without assessment, but only to the extent they “exceed the tax shown on the return”. Sec. 1.6664-2(d), Income Tax Regs. Since actual withholdings of $3,097 were less than the $57,244 of tax shown on the return, Y is set to be zero. Further, Z is the amount of the sec. 6664(a)(2) rebate, calculated pursuant to sec. 1.6664-2(e), Income Tax Regs., as follows. The rebate would consist of the excess of the tax imposed over the amount specified in sec. 1.6664-2(e)(1), Income Tax Regs. The latter is the higher of the amount shown as the tax, or $57,244, and the total claimed withholdings, or $138,097. This yields: $138,097 - $30,022 = $108,075, which is larger than the refund of $80,853 by exactly the amount by which petitioner overstated his tax liability, or $27,222. This $27,222 (in addition to the $80,853 refund) is also a rebate, and one trivially so in the sense that it is an abatement or credit of a self-reported and immediately assessable tax liability, and such abatement or credit must necessarily have been "made on the ground that the tax imposed was less than the * * * [tax shown on the return]”. Sec. 1.6664-2(e), Income Tax Regs. Begin with the formula forunderpayment from supra note 4, Underpayment = (W + Z) - (X + Y). Since Y is zero, the formula can be simplified, Underpayment = W + Z - X. The numbers for W, Z, and X, from above, are $30,022, $57,244, and $108,075, respectively. Plugging these numbers in the formula, Underpayment = W + Z - X = $30,022 + $108,075 - $57,244 = $138,097 - $57,244 = $80,853. The $80,853 underpayment equals the amount of the refund, and this proves the claim made at the outset. Now, consider the impact of the challenged adjustment under sec. 1.6664-2(c)(l), Income Tax Regs. The adjustment would reduce the amount of tax shown on the return of $57,244 by the fictitious withholdings of $135,000 and, thus, arrive at a negative number for X of -$77,756. The numbers for W, Z, and Y would be unchanged; i.e., $30,022, $108,075, and zero, respectively. Plugging these numbers in the formula, Underpayment = W + Z - X = $30,022 + $108,075 - (-$77,756) = $138,097 + $77,756 = $215,853. The $215,853 underpayment is larger than the $135,000 fictitious withholdings by exactly the refund amount of $80,853, demonstrating that the refunded portion of the fictitious withholdings has been counted twice. Respondent actually determined a 1992 underpayment amount for petitioner of only $104,642. Presumably under authority of sec. 1.6664-2(g), Example (1), Income Tax Regs., and notwithstanding the plain language of sec. 1.6664-2(d) and (e), Income Tax Regs., respondent declined to recognize the $80,853 refund as a sec. 6664(a)(2) rebate. Curiously, respondent also did not consider as a rebate the $27,222 by which petitioner had overstated his 1992 tax liability. Petitioner had shown this amount as tax, but respondent determined it not to be so and chose not to assess it. Consequently, sec. 1.6664-2(g), Example (I), Income Tax Regs., would not apply, and this amount would appear to be a rebate, not just for sec. 6664(a)(2) purposes, but even in the deficiency context. See sec. 6211(b)(2). Ignoring it as a rebate caused petitioner’s 1992 underpayment to be lower by $27,222. Respondent’s munificence to petitioner did not end there. Instead of using the actual $57,244 figure that petitioner had handwritten as his tax on his return, respondent used an “as adjusted” amount of $60,380 as the tax shown. We, and other courts, have consistently held that a postfiling adjustment or payment cannot mitigate a fraud that was perpetrated when the return was filed. See text supra between notes 4 and 5; see also Badaracco v. Commissioner, 464 U.S. 386 (1984). Taking a postfiling adjustment of $3,136 into account caused petitioner’s 1992 underpayment amount to be lower by the same amount. In the underpayment formula, respondent set Z to be zero and derived X as follows. Starting with $60,380 as the tax shown, respondent reduced that amount by the fictitious withholdings of $135,000 and, thus, arrived at a negative number for X of -$74,620. Plugging these numbers in the formula, Underpayment = W + Z — X = $30,022 + $0 - (-$74,620) = $30,022 + $74,620 = $104,642.